UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES COVEY,                                    Case No. 12-10326

                    Plaintiff,                  Nancy G. Edmunds
v.                                              United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                Michael Hluchaniuk
                                                United States Magistrate Judge

                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 16)**

## I.      PROCEDURAL HISTORY

A.      Proceedings in this Court

On January 25, 2012, plaintiff filed the instant suit seeking judicial review

of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Nancy G. Edmunds referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claim for a period of

disability, disability insurance, and supplemental security income benefits.  (Dkt.

3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt.

13, 16).

B.      Administrative Proceedings

Plaintiff filed the instant claims on September 24, 2010, alleging that he became unable to work on July 15, 2009.  (Dkt. 8-2, Pg ID 38).  The claim was initially disapproved by the Commissioner on November 12, 2010. (Dkt. 8-2, Pg ID 38).  Plaintiff requested a hearing and on September 16, 2011, plaintiff appeared with counsel before Administrative Law Judge (ALJ) JoErin O'Leary, who considered the case *de novo*.  At the hearing, plaintiff amended his onset date to December 4, 2009.  In a decision dated October 7, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 8-2, Pg ID 38-47).  Plaintiff requested a review of this decision on November 2, 2011.  (Dkt. 8-2, Pg ID 34).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (Dkt. 8-2, Pg ID 28-29), the Appeals Council, on March 24, 2011, denied plaintiff's request for review.  (Dkt. 8-2, Pg ID 30-33); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.   FACTUAL BACKGROUND

### A.   <u>ALJ Findings</u>

Plaintiff was 47 years of age at the time of the most recent administrative hearing.  (Dkt. 8-2, Pg ID 43).  Plaintiff's has past relevant work history as a truck driver and car salesperson.  (Dkt. 8-2, Pg ID 46).  In denying plaintiff's claims, defendant Commissioner considered osteoarthritis, degenerative disc disease, diabetes mellitus with peripheral neuropathy, and carpal tunnel syndrome.  (Dkt. 8-2, Pg ID 40).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since December 4, 2009, the amended alleged onset date.  (Dkt. 8-2, Pg ID 40).  At step two, the ALJ found that plaintiff's osteoarthritis, degenerative disc disease, diabetes mellitus with peripheral neuropathy, and carpal tunnel syndrome were "severe" within the meaning of the second sequential step.  *Id.*  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 8-2, Pg ID 41).  At step four, the ALJ found plaintiff unable to perform any past relevant work, but could perform a

limited range of sedentary work.  (Dkt. 8-2, Pg ID 46).  At step five, the ALJ

denied plaintiff benefits because plaintiff could perform a significant number of

jobs available in the national economy.  (Dkt.6-2, Pg ID 43).

    B.    <u>Plaintiff's Claims of Error</u>

Plaintiff first claims that the ALJ's RFC failed to account for his moderate

difficulties in concentration, persistence, or pace.  Plaintiff acknowledges that the

ALJ found that he was limited to unskilled work based on concentration,

persistence, or pace limitations, but complains that the ALJ made no findings

relative to the degree of difficulty experienced by plaintiff.  Plaintiff also argues

that the ALJ's hypothetical to the VE did not address speed and pace restrictions.

And, plaintiff seems to claim that his use of a cane to stand was work preclusive,

as explained by the VE.  Plaintiff also points out the VE testified that a person

who required a nap of 2 hours several times per week would be precluded from all

employment.  According to plaintiff, the ALJ failed to properly articulate the

reasons for finding that plaintiff was not fully credible.

Plaintiff next claims that the ALJ's RFC did not fully account for all his

physical limitations, pointing to his inability to perform work on a sustained and

continuous basis, his need to nap during the day, and his limitations in

concentration, persistence, and pace.  Finally, plaintiff argues that the ALJ failed

to give controlling weight to the opinions of plaintiff's treating physicians

regarding his limitations.  And even if the opinion was not entitled to controlling weight, plaintiff asserts that the ALJ failed to weigh it appropriately under the applicable regulations.  According to plaintiff, in evaluating the evidence and opinions of plaintiff's treating physicians, the ALJ failed to appreciate the difference between pain generated by non-neurologic sources and neurogenic pain.  In summary, plaintiff asserts that the ALJ substituted her own medical judgment for that of plaintiff's treating physicians, given that there are no consultative medical findings or reports in the record.

> C.   Commissioner's Motion for Summary Judgment

According to the Commissioner, substantial evidence supports the ALJ's finding that plaintiff was not disabled because he could perform a range of sedentary work.  While the ALJ found that plaintiff had several severe impairments, the Commissioner contends that she accounted for their resultant symptoms and limiting effects by imposing postural, manipulative, and environmental restrictions over and above the limitation to unskilled sedentary work.  The Commissioner points out that the limitation to sedentary work alone represents a significant reduction in the kind of work plaintiff could undertake. The limitation to sedentary work accommodates plaintiff's complaints of leg and back pain, general weakness, and fatigue—symptoms that plaintiff explained resulted from osteoarthritis, degenerative disc disease, and peripheral neuropathy.

The Commissioner also argues that the limitation to sedentary work is consistent with an opinion rendered by one of plaintiff's treating physicians.  In August 2001, Lino S. Dial, D.O., completed a "Musculoskeletal Residual Functional Capacity Questionnaire," in which he indicated that plaintiff could lift up to 10 pounds occasionally.  (Tr. 460).  The Commissioner also points out that the ALJ imposed additional limitations to provide additional accommodation for plaintiff's symptoms by restricting him from work involving climbing ladders, ropes, and scaffolds, or kneeling or crawling.  (Tr. 13).  These restrictions further addressed plaintiff's complaints of back pain, lower extremity pain, and weakness.  In light of plaintiff's impairment that affected his upper extremity, the ALJ imposed the additional restrictions of only occasional handling and fingering with the left upper extremity.  (Tr. 13).  And, because plaintiff's pain and medication produced weakness and fatigue, the ALJ also restricted plaintiff from working at unprotected heights or around dangerous moving machinery.  (Tr. 13).  Plaintiff also testified that fatigue and pain made it hard for him to maintain concentration, so the ALJ included the additional restriction to work involving simple tasks consistent with unskilled work.  (Tr. 13).

According to the Commissioner, the ALJ cited medical evidence that demonstrated that her RFC finding accommodated all of plaintiff's limitations and symptoms.  Explaining that the medical evidence does not support a finding of

disability, the ALJ noted that MRIs from July 2010 and June 2011 revealed no more than mild degenerative changes at the L4-L5 and L5-S1 vertebrae. (Tr. 14 citing Tr. 302, 462). The June 2011 MRI revealed no evidence of disc herniation or neural foraminal impingement. (Tr. 14 citing Tr. 462). The Commissioner also observes that, as to plaintiff's allegations of back pain, the ALJ noted that medical records showed that plaintiff did not complain of such pain until June 2010 (after his alleged onset date and in contradiction with his hearing testimony), and that he did not begin seeing a pain specialist until December 2010 (approximately one year after his alleged onset date). (Tr. 14). The ALJ further noted that neither Dr. Dial nor pain specialist Tolga Kurt, M.D., consistently reported significant sensory or motor abnormalities. (Tr. 14). Rather, the Commissioner points out that Dr. Kurt never indicated positive straight leg raise testing or other positive radicular symptoms. (Tr. 14). And, citing a July 2010 EMG study of plaintiff's lower extremities, the ALJ also accurately noted that plaintiff's examinations indicated normal sensory, motor, and reflex functioning. (Tr. 14-15, citing Tr. 372-73).

Similarly, while some examinations revealed that plaintiff walked with an antalgic gait, the Commissioner asserts that the ALJ correctly pointed out that the record did not document that plaintiff required an assistive device to ambulate. (Tr. 15). Plaintiff himself testified that he had used a cane for only five or six

months prior to the hearing and that his doctor never instructed that he use it full time. (Tr. 39). While plaintiff complained of significant knee pain, the ALJ noted that imaging studies of the knee were "largely normal," and cited a February 2010 MRI that showed "subtle roughness" to the patellar cartridge in the right knee but no evidence of degenerative changes. (Tr. 15 citing Tr. 209). An MRI study of the left knee from the same month was negative. (Tr. 211). Similarly, Xrays of the knee taken in February 2010 revealed "no visualized abnormalities." (Tr. 213). While plaintiff testified that diabetic neuropathy caused pain in his lower extremities (Tr. 31), plaintiff also testified that insulin kept his blood sugar levels under control. (Tr. 29-30). Consistent with this testimony, the ALJ noted that plaintiff's blood glucose was under control, and also noted that despite plaintiff's allegations of neuropathic pain, the record did not document any significant neurological findings. (Tr. 16).

As for plaintiff's upper extremities, the Commissioner points out that the ALJ cited a May 2011 x-ray study of plaintiff's cervical spine that revealed only mild degenerative changes. (Tr. 15 citing Tr. 464). She noted that Dr. Dial consistently made no significant upper extremity findings. (Tr. 15). While plaintiff had carpal tunnel syndrome, he underwent successful carpal tunnel release and ulnar nerve entrapment on his left extremity in June 2010, after which he reported significant improvement. (Tr. 15 citing Tr. 272-74). John V. Murphy,

D.O., who performed the procedure, noted in August that plaintiff was doing well and discussed with plaintiff a gradual return to activities. (Tr. 275). The ALJ noted that Dr. Murphy found plaintiff had only "mildly diminished" grip strength in December 2010. (Tr. 15 citing 325). In January 2011, Dr. Murphy found full grip strength and full range of motion on the left after performing a left thumb pulley release. (Tr. 338). The ALJ found no evidence of any similar limitations in plaintiff's right upper extremity (Tr. 15) and plaintiff himself testified his right side was better than the left and did not require surgery. (Tr. 33). Thus, according to the Commissioner, substantial evidence thus shows that while plaintiff had severe impairments, none was disabling, and the ALJ accounted for their limiting effects.

The Commissioner next points out that the ALJ did not find that plaintiff had a mental impairment, and the record contains no such diagnosis and plaintiff himself does not allege one. Nonetheless, in recognition of plaintiff's testimony that his pain and medication made it difficult for him to concentrate the ALJ limited plaintiff to "simple tasks, consistent with unskilled work." (Tr. 13). Plaintiff argues, however, that the ALJ failed to account for his moderate difficulties maintaining concentration, persistence, or pace. Pl. Br. at 9-11. According to the Commissioner, plaintiff's argument fails because it rests on the faulty premise that plaintiff had moderate difficulties in maintaining concentration,

Report and Recommendation
Cross-Motions for Summary Judgment
*Covey v. Comm'r*; Case No. 12-10326

persistence, or pace.  The ALJ made no such finding.  Rather, the ALJ twice

mentioned Plaintiff's ability to concentrate.  She mentioned it first in her RFC

finding: "Due to chronic pain, he is limited to simple tasks, consistent with

unskilled work." (Tr. 13).  She next mentioned it near the end of her discussion of

the basis for her RFC finding:  "Additionally, I find that the combination of these

symptoms, along with the claimant's use of narcotic medications, would interrupt

his concentration sufficiently to limit him to unskilled work." (Tr. 16).  In the

same paragraph as that latter statement, the ALJ concludes, "However, I cannot

find further limitations, due to the lack of objective medical evidence consistent

with the functional problems alleged." (Tr. 16).  While the ALJ found that

plaintiff may have problems concentrating, she did not find that those problems

rose to the moderate, as opposed to mild level, and she did not find that Plaintiff

had trouble maintaining persistence or pace.  The Commissioner also points out

that no treating, examining, or reviewing psychologist or physician indicated

whether and to what degree plaintiff had such limitations.  In fact, no mental

health professional treated or examined Plaintiff.  While Dr. Dial noted in his

functional assessment that plaintiff "may have dizziness" from pain medication

(Tr. 458), the Commissioner points out that he did not indicate that plaintiff had

any problems concentrating, let alone opine that such problems were of moderate

severity.  (Tr. 457-60).  No other evidence of record save for plaintiff's own

testimony documents any problem in concentration.  Yet in a function report, plaintiff indicated that he could follow written and spoken instructions "very well" and pay attention "all the time."  (Tr. 166).  According to the Commissioner, while plaintiff maintains that the ALJ should have accounted for such difficulties, he cites no evidence to support that he had such moderate difficulties in the first place and he does not explain why the ALJ's limitation to simple tasks and unskilled work did not adequately account for the problems in concentration that the ALJ found.

The Commissioner contends that plaintiff reads the ALJ's decision regarding credibility much too narrowly.  In finding plaintiff only partially credible, the ALJ cited much more evidence and reasons other than the lack of corroboration between the medical evidence and plaintiff's allegations.  The ALJ cited other objective medical evidence that did not support Plaintiff's claims as well as other reasons for discounting his credibility in subsequent paragraphs where she explained the basis for her RFC finding.  The Commissioner again asserts that the other objective medical evidence that is incongruent with plaintiff's allegations of disabling pain and fatigue includes plaintiff's not complaining of back pain or seeing a pain specialist until well after the time he claimed he became disabled, a July 2010 lower extremity EMG study that produced normal results, largely normal imaging studies of the knee, medical

records and plaintiff's testimony that insulin controlled his blood glucose

levels, no objective medical evidence documenting significant limitations in

plaintiff's right upper extremity, and Dr. Murphy's treatment notes that plaintiff

underwent successful treatment for carpal tunnel syndrome on the left and had full

grip strength by January 2011.  According to the Commissioner, the ALJ correctly

considered such evidence and noted that it undermined plaintiff's claims.

      The Commissioner acknowledges regulations require that an ALJ base her

credibility finding on more than the objective medical evidence's lack of support

for plaintiff's claims and contends that the ALJ did so.  She also noted that

plaintiff's pain treatment was largely conservative.  (Tr. 15).  Plaintiff notes that

he received pain injections, but he testified that his physicians refused to consider

back surgery, despite his pressing for it.  (Tr. 38).  The Commissioner maintains

that such refusal—and plaintiff's testimony—supports the ALJ's finding that

plaintiff's back impairment was not as severe as alleged.  The ALJ also relied on

testimony of plaintiff's activities.  She cited an October 2010 function report in

which plaintiff denied using a cane or other ambulatory aid.  (Tr. 15).  Indeed,

plaintiff's reported activities, as set forth here, are incompatible with his claims of

complete disability.  According to this report, which plaintiff authored with his

wife, plaintiff helped care for his children, cooked, and cleaned.  (Tr. 162).

Plaintiff had no difficulty with his self-care.  (Tr. 162).  Plaintiff did such

household work as washing laundry and dishes, mowing the lawn, and gardening. (Tr. 163). Plaintiff went shopping four times monthly for "a few" hours at a time. (Tr. 164). For recreation, plaintiff played cards. (Tr. 165). The ALJ correctly considered this evidence in discounting plaintiff's claims of disabling pain and weakness that significantly curtailed his ability to ambulate. Thus, the Commissioner urges the Court to concluded that substantial evidence supports the ALJ's finding that plaintiff was not fully credible.

Next, the Commissioner argues that the ALJ properly declined to give controlling weight to Dr. Dial's opinions. In the RFC questionnaire that he completed, Dr. Dial indicated that plaintiff could occasionally lift up to 10 pounds, which is consistent with the ALJ's restricting plaintiff to sedentary work. In the same assessment, Dr. Dial also opined that plaintiff could sit for only 15 minutes at a time, stand for only 10 minutes at a time, and perform each for less than two hours in an eight hour day. (Tr. 459). Dr. Dial further believed that plaintiff would need to lie down at unpredictable intervals during work each day, and would have to spend more than 50% of the day with his legs elevated above chest level. (Tr. 459). According to the Commissioner, the ALJ properly evaluated Dr. Dial's opinions, explaining that she gave little weight to them because his extreme opinion, suggestive of disability, was not consistent with substantial medical evidence of record, including Dr. Dial's own treatment notes. (Tr. 16). The

Commissioner points out that the medical and other evidence the ALJ cited in support of her RFC finding supports the ALJ's determination to give little weight to Dr. Dial's opinion.  Additionally, findings that Dr. Dial notes in his assessment contradict his conclusions, which undermines his opinions.  For example, Dr. Dial himself noted, and thereby confirmed the ALJ's finding that plaintiff had only minor degenerative changes in his lumbar and cervical spine.  (Tr. 457).  The Commissioner also contends that Dr. Dial's extreme opinion is also inconsistent with plaintiff's activities, which suggest that plaintiff could stand and sit for much longer intervals than Dr. Dial believed.

The Commissioner also urges the Court to reject plaintiff's complaint that the ALJ erred by not adopting Dr. Dial's functional assessment in toto because the record contained no competing opinion for the ALJ to adopt.  Plaintiff cites no authority that explicitly holds that an ALJ must adopt a specific RFC assessment from a medical source.  According to the Commissioner, the regulations make clear that an ALJ has no such obligation, given that the determination of a claimant's RFC lies solely within the province of the Commissioner.  *See* 20 C.F.R. § 404.1527(e)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the

Report and Recommendation
Cross-Motions for Summary Judgment
*Covey v. Comm'r*; Case No. 12-10326

application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner."). The Commissioner contends that the Sixth Circuit has rejected a similar argument in *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388 (6th Cir. 1999). There, the court noted that a claimant, and not the Commissioner bears the burden of proof for the RFC determination, and affirmed the Commissioner's RFC finding even in the absence of a formal RFC assessment. *See id.* at 391 ("If a claimant does not secure an official 'Residual Functional Capacity' assessment by a medical or psychological examiner, and simply relies on other evidence to prove his impairments, it does not follow that the Commissioner subsequently must provide the RFC assessment at step five."). Here, the Commissioner argues that the ALJ properly made his RFC finding by reviewing the medical evidence that plaintiff submitted and the other evidence of record.

## III.   ANALYSIS AND CONCLUSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

    If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do

basic work activities," benefits are denied without
further analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

    "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

 If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

 C. <u>Analysis and Conclusions</u>

  1. Treating physician evidence

 In weighing the opinions and medical evidence, the ALJ must consider

relevant factors such as the length, nature and extent of the treating relationship,

the frequency of examination, the medical specialty of the treating physician, the

opinion's evidentiary support, and its consistency with the record as a whole.  20

C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source

is entitled to more weight than a non-examining source and a treating physician's

opinion is entitled to more weight than a consultative physician who only

examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision

denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 96-2p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003). Courts have

remanded the Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source, as § 1527(d)(2) requires. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing, *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

In this case, the undersigned concludes that the ALJ properly gave Dr. Dial's opinions less than controlling weight. Dr. Dial's opinion itself seems rather extreme, in view of the conservative treatment given to plaintiff and recommended by Dr. Dial. And, as the ALJ pointed out, nothing in Dr. Dial's clinical findings supports such limitations. There is nothing in plaintiff's treatment records suggesting that he was required to lie down more than 50% of the day with his legs elevated at chest level. In addition, the opinion itself contains internal inconsistencies. For example, Dr. Dial opined that, in an eight-hour work day, plaintiff must walk every 15 minutes for 10 minutes at a time, but could not walk/stand more than 2 hours per day. Finally, the opinion offered by Dr. Dial was given well after much of the treatment occurred. The Sixth Circuit has upheld the decision of an ALJ to give less than controlling weight to a treating physician

Report and Recommendation
Cross-Motions for Summary Judgment
*Covey v. Comm'r*; Case No. 12-10326

opinion that was not issued contemporaneously with treatment. *Infantado v. Astrue*, 263 Fed.Appx. 469 (6th Cir. 2008) (The failure to explicitly reference the regulation factors was not grounds for reversal because it was not an impediment to meaningful review on appeal, where the ALJ concluding that treating physician opinion was without foundation, given that the treating physician was did not start treating the plaintiff until 2.5 years after the relevant period.); *Butcher v. Sec'y of Health and Hum. Serv.*, 1994 WL 589504 (6th Cir. 1994) (Treating physician opinion rendered 2.5 years after the relevant period and which contradicted the contemporaneous evidence was appropriately not given controlling weight). Under the foregoing circumstances, the undersigned concludes that the ALJ properly gave Dr. Dial's opinion less than controlling weight.

### 2.    Mental Impairment

Plaintiff's claims that the ALJ erred by not accounting for a moderate impairment in concentration, persistence, or pace is without merit because plaintiff fails to explain why the ALJ should have found a moderate impairment in plaintiff concentration, persistence or pace.  Plaintiff points to no evidence in the record of any mental impairment being diagnosed or treated.  Thus, there are, of course, no opinions in the record concluding that plaintiff has such a moderate limitation in this area and plaintiff's own submissions are to the contrary, as noted by the Commissioner.  Plaintiff's own activities questionnaire states that he reads every

day, he can pay attention "all the time" and he follows instructions "very well."
(Dkt. 8-6, Pg ID 198-199). In the absence of any significant medical evidence
documenting a severe mental impairment, the ALJ reasonably concluded that
plaintiff had a mild impairment in concentration based on his chronic pain and
medications. Moreover, this mild impairment was sufficiently accommodated in
the RFC. In the absence of any medical or opinion evidence documenting a severe
mental impairment, the cases cited by plaintiff holding that "simple work" does
not sufficiently account for a moderate impairment in concentration, persistence or
pace, are simply inapplicable.

3.      Single Decision-Maker

The parties each approach the lack of a consulting medical opinion in a
different matter. According to plaintiff, the lack of a consulting medical expert
opinion means that the ALJ should have accepted the opinions of the treating
physician because no other opinions are in the record. According to the
Commissioner, there is no requirement for the ALJ to obtain an opinion from a
medical consultant because ultimately, the determination of the RFC is the ALJ's
province. Neither party has it exactly right, but the lack of a expert medical
opinion on the issue of equivalency is problematic. In this case, the single-
decision maker (SDM) model was used pursuant to 20 C.F.R. §§ 404.906(b)(2).
This regulation provides streamlined procedures as an experiment, in which State

Agency disability examiners may decide cases without documenting medical

opinions from State Agency medical consultants.  The "single decisionmaker

model" was an experimental modification of the disability determination process

that happens to have been used in Michigan.  *See Leverette v. Comm'r*, 2011 WL

4062380 (E.D. Mich. 2011).  This experiment eliminated the reconsideration level

of review and allowed claims to go straight from initial denial to ALJ hearing.  *Id*.

Most significantly, it allowed the state agency employee (the single

decisionmaker) to render the initial denial of benefits without documenting

medical opinions from the state agency medical consultants.  *Id*., citing 20 C.F.R.

§§ 404.906(b)(2), 416.1406(b)(2).  The Programs Operations Manual System

(POMS) requires it to "be clear to the appeal-level adjudicator when the

SSA–4734–BK [the PRFC assessment form] was completed by an SDM because

SDM-completed forms are not opinion evidence at the appeal levels."  POMS DI

§ 24510.05.  In this case, there was "Disability Determination Explanation"

completed by an SDM, Stephanie McPherson.  (Dkt. 8-3, Pg ID 85-104).  Thus, no

medical opinion was obtained at this level of review, in accordance with this

model.

       While the ALJ did not rely on the opinions of the SDM, which would have

been wholly improper, the lack of any medical opinion on the issue of equivalence

is still an error requiring remand.  As set forth in *Stratton v. Astrue*, — F.Supp.2d

—; 2012 WL 1852084, *11-12 (D. N.H. 2012), SSR 96-6p describes the process

by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for
> deciding the ultimate legal question whether a listing is
> met or equaled. As trier of the facts, an administrative
> law judge ... is not bound by a finding by a State agency
> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, *longstanding
> policy requires that the judgment of a physician* (or
> psychologist) designated by the Commissioner *on the
> issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the
> record as expert opinion evidence and given appropriate
> weight.*

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670

(7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical

judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20

C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir.

1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. 2011) (warning that an

ALJ who makes a step-three equivalence determination without expert-opinion

evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence

determinations differently from determinations as to whether an impairment meets

a listing, requiring expert evidence for the former, but not the latter.  *Id.* at. *12;

citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic

principle behind SSR 96-6p is that while an ALJ is capable of reviewing records

to determine whether a claimant's ailments meet the Listings, expert assistance is

crucial to an ALJ's determination of whether a claimant's ailments are equivalent

to the Listings.") (citation and quotation marks omitted).  This expert opinion

requirement can be satisfied by a signature on the Disability Determination

Transmittal Form.  *Stratton*, at *12, citing SSR 96-6p, 1996 WL 374180, at *3

(The expert-opinion evidence required by SSR 96-6p can take many forms,

including "[t]he signature of a State agency medical ... consultant on an SSA-831-

U5 (Disability Determination and Transmittal Form).");  *Field v. Barnhart*, 2006

WL 549305, at *3 (D. Me. 2006) ("The Record contains a Disability

Determination and Transmittal Form signed by Iver C. Nielson, M.D ....

discharging the commissioner's basic duty to obtain medical-expert advice

concerning the Listings question.").  In this case, there is no such signature on the

Disability Determination and Transmittal Form.  (Dkt. 8-3, Pg ID 85).

    The great weight of authority[2] holds that a record lacking any medical

---

[2] In *Stratton*, the court noted that a decision from Maine "stands alone" in determination
that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a
medical opinion on the issue of equivalence." *Id.*, citing *Goupil v. Barnhart*, 2003 WL 22466164,

advisor opinion on equivalency requires a remand. *Stratton*, at \*13 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at \*8 (W.D. Wash. 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record); *Wadsworth v. Astrue*, WL 2857326, at \*7 (S.D. Ind. 2008) (holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing"). While the government has argued in other cases that courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM, *see Gallagher v. Comm'r*, 2011 WL 3841632 (E.D. Mich. 2011) and *Timm v. Comm'r*, 2011 WL 846059 (E.D. Mich. 2011), the undersigned does not find these cases persuasive. In both cases, the court concluded that because the regulations permitted an SDM to make disability determination without a medical consultant that the ALJ is, therefore, also permitted to do so where the "single decisionmaker" model is in use. Nothing about the SDM model changes the ALJ's obligations in the equivalency analysis. *See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at \*2 (6th Cir. 1995)

at \*2 n. 3 (D. Me. 2003).

("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)). Based on the foregoing, the undersigned cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used. While the SDM is not required to obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified the ALJ's obligations and it makes little sense to conclude that the ALJ is relieved from obtaining an expert medical opinion in SDM cases. Thus, the undersigned's analysis does not alter the SDM model, which leaves the SDM discretion as to whether a medical expert is consulted as to physical impairments. Rather, the undersigned's analysis leaves intact the requirements imposed on an ALJ in making an equivalency determination, which does not otherwise appear to be modified by the SDM model. *See also*, *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence.").

  While there is support for the proposition that such an error can be harmless and the undersigned is not necessarily convinced that plaintiff can show his physical impairments satisfy the equivalency requirements, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s

impairments ... in combination equal one of the Commissioner's listings."
*Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. 2012).  For these reasons,
the undersigned concludes that this matter must be remanded so that the ALJ can
obtain the opinion of a qualified medical advisor on the issue of equivalence.
Given these conclusions, plaintiff's credibility will necessarily require re-
evaluation.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that
plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion
for summary judgment be **DENIED**, that the findings of the Commissioner be
**REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and
Recommendation, but are required to file any objections within 14 days of service,
as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule
72.1(d).  Failure to file specific objections constitutes a waiver of any further right
of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and
Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some
issues but fail to raise others with specificity will not preserve all the objections a
party might have to this Report and Recommendation.  *Willis v. Sec'y of Health
and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 16, 2013                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on January 16, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: John M. Morosi, Marc Boxerman and Theresa M. Urbanic, AUSA, and the Commissioner of Social Security.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7850
                                          tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Covey v. Comm'r*; Case No. 12-10326